# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| MARLEN REZA, | ) | 3:06-cv-00211-BES (VPC) |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| IGT, a Nevada corporation, and DOES 1-10, | ) | |
| Defendants. | ) | |

Presently before this Court is a Motion for Reconsideration (#59) filed by Plaintiff Marlen Reza ("Reza"). Defendant International Game Technology ("IGT") filed an Opposition to Plaintiff's Motion for Reconsideration (#61) and Reza filed a Reply.

## I. BACKGROUND

On May 25, 2007, IGT filed a Motion for Summary Judgment (#45) on the grounds that Reza could not support her claims for violations of the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). A hearing on the motion was held and the Court entered an Order (#56) on October 31, 2007 granting summary judgment on each of Plaintiff's claims. In her Motion for Reconsideration, Reza asks the Court to reconsider the summary judgment decision, broadly alleging that the Court erred in its application of the law and also claiming that disputed issues of fact exist that preclude summary judgment.

## II. ANALYSIS

**A.  Standard for Reconsideration**

Fed.R.Civ.P. 59(e) provides an opportunity for a district court to reconsider its previous order if: (1) the court is presented with newly discovered evidence; (2) the court committed

clear error or made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law. Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) (citation omitted); 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir.1999) ("Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances . . ."). Motions to reconsider are generally avoided. See e.g., United States v. Mills, 810 F.2d 907, 909 (9th Cir. 1987) ("[t]he law of the case doctrine provides that in order to maintain consistency during the course of a single case, reconsideration of questions previously decided should be avoided"); see also Old Person v. Brown, 312 F.3d 1036, 1039 (9th Cir. 2002).

Plaintiff does not allege that there is any newly discovered evidence or that there has been an intervening change in controlling law. Although Plaintiff does not state that the Court committed clear error or made a decision that was manifestly unjust, she contends that the Court improperly analyzed her ADA claim and that summary judgment on this claim was therefore improperly granted.[1] Specifically, Plaintiff maintains that reconsideration of the Court's grant of summary judgment is warranted for the following reasons: (1) the Court placed an improper high burden of proof upon Plaintiff; (2) the Court erroneously applied a McDonnell Douglas burden-shifting analysis to Plaintiff's ADA claim; (3) the Court erroneously concluded, in essence, that Plaintiff's suggested accommodations presented an "undue hardship" for IGT; and (4) summary judgment is not available because IGT did not engage in the interactive process of assessing reasonable accommodations. The Court has decided to reconsider its prior Order (#56), but its ruling on IGT's dispositive motion remains the same.

**B.    Proper Legal Framework for Plaintiff's ADA Claim**

Plaintiff maintains that "this Court inadvertently performed an incorrect legal analysis" by applying the Title VII burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The Court disagrees with Plaintiff's

---

[1] Plaintiff has not raised any arguments with regard to the Court's decision to grant summary judgment on her FMLA claim. Accordingly, the Court will not reconsider that portion of its Order (#56) regarding the FMLA claim.

2

broad assertion that the McDonnell Douglas burden-shifting analysis is never appropriately applied in ADA cases.[2] However, upon review of Plaintiff's Motion for Reconsideration (#59) and further review of the entire record, the Court concludes that analysis of this case does not squarely fit within the McDonnell Douglas framework, which is more appropriately applied to a disparate-treatment claim. Where, as in this case, the plaintiff's disability was clearly a factor in the adverse action taken by the employer, the central issue becomes whether the employer failed to reasonably accommodate the plaintiff's disability. Thus, the Court has reconsidered its decision within a "failure to accommodate" framework.

**C.    Reasonable Accommodation**

The ADA prohibits employers from discriminating against employees by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business."[3]  42 U.S.C. § 12112(b)(5)(A); US Airways, Inc. v. Barnett, 535 U.S. 391, 396 (2002). A plaintiff bears the initial burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an available job. Dark v. Curry County, 451 F.3d 1078, 1088 (9th Cir. 2006); see also Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1176 (9th Cir. 1998). Once an employee requests an accommodation or an employer recognizes the employee needs an accommodation, the parties must engage in an informal, interactive process to identify an appropriate reasonable accommodation. Dark, 451 F.3d at 1088; 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation

---

[2] In the Ninth Circuit, if an employer disclaims any reliance on the employee's disability in having taken the challenged employment action, the McDonnell Douglas Title VII disparate impact analysis should be used to determine if the employer's reason is pretextual. See Snead v. Metropolitan Property & Casualty Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001). Thus, once plaintiff establishes a prima facie case of discrimination and defendant comes forward with a legitimate, non-discriminatory reason for its actions, then the burden shifts back to plaintiff to establish that defendant's proffered reason is merely a pretext for a discriminatory motive and the ultimate burden of persuasion remains with the plaintiff. See Hernandez v. Hughes Missile Systems Co., 362 F.3d 564, 568 (9th Cir. 2004) (applying the traditional framework for analyzing Title VII cases to an ADA case).

[3] IGT has not argued that any of the accommodations that were considered in this case would have presented an undue hardship to its business.

it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). Both sides must participate in this "good-faith exploration of possible accommodations." Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001). Failure to do so by the party seeking an accommodation can defeat a claim for discrimination. See Allen v. Pac. Bell, 348 F.3d 1113, 1115-16 (9th Cir. 2003) (affirming summary judgment when the plaintiff refused to participate in an interactive process with his prospective employer).

Here, the record indicates that IGT did engage in the interactive process with Plaintiff, which resulted in IGT offering a reasonable accommodation to Plaintiff. When IGT became aware of Plaintiff's inability to speak, IGT properly initiated the interactive process by offering to bring Plaintiff back to her former position as a Product Tester without the additional responsibilities of a "lead." Plaintiff claims that she then suggested several reasonable accommodations that would have allowed her to perform her prior duties of the lead position, such as using email or instant messaging. However, IGT rejected Plaintiff's suggested accommodations because they would not enable her to perform the essential function of verbally communicating with coworkers, a vital component of the lead position.[4] Regulations under the ADA provide that "job restructuring" may be a "reasonable accommodation" required of the employer. Dark, 451 F.3d at 1088-89 (citing 29 C.F.R. § 1630.2(o)(2)(ii)). However, the ADA "does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees." Id. at 1089 (citing 29 C.F.R. Part 1630, App. ("An employer or other covered entity may restructure a job by reallocating or redistributing nonessential, marginal job functions."). Thus, IGT was not required to

---

[4] Plaintiff claims the Court erroneously made an "undue hardship" finding when it concluded that Plaintiff's suggested accommodations were "not feasible." However, the Court's conclusion was not based on a finding of undue hardship. Rather, the Court's conclusion was based on a finding that Plaintiff's suggested accommodations would not "help her perform the essential functions of the lead duties." (Order (#56), p. 10).

4

restructure Plaintiff's prior lead position by exempting Plaintiff from the essential duty of verbally communicating with her coworkers.

In the absence of any reasonable accommodation that would enable Plaintiff to perform the essential functions of her previous lead position, IGT properly considered reassignment as an alternative accommodation. Accordingly, IGT again offered Plaintiff the Product Tester position, a reassignment that was consistent with Reza's medical restrictions and did not require speaking. (Motion (#45), Ex. R). Although Plaintiff objected to the reassignment because it did not provide the 10% pay differential she had previously received for performing lead responsibilities, Plaintiff signed a letter indicating her willingness to accept the proposed accommodation. Id. Plaintiff then informed IGT for the first time that she could not be exposed to certain smells in the workplace. Plaintiff refused to return to work because of possible exposure to these smells, but she did not suggest or request any accommodations. IGT asked Plaintiff to produce medical documentation regarding Plaintiff's sensitivity to certain smells and also attempted to contact Plaintiff's physician. Plaintiff did not follow up with IGT and did not return to work, which resulted in her termination. (Motion (#45), Ex. W).

Plaintiff claims that IGT's "single discussed transfer disguised as an accommodation does not meet the requirements of the interactive process." (Motion (#59), p. 8). However, the evidence does not show a genuine dispute of material fact as to whether defendant failed to provide a reasonable accommodation or failed to engage in good faith in the interactive process. IGT was not, as Plaintiff asserts, required to "allow Ms. Reza to choose her preference in an accommodation." (Motion (#59), p. 8). See Zinkovic v. Southern California Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation."). Furthermore, the ADA specifically contemplates "reassignment" as a possible accommodation. See O'Bryan v. State, ex rel. Its Dept. Of Conservation and Natural Resources, 2006 WL 2711550, *3 (D. Nev. 2006) (citing 42 U.S.C. § 12111(9)(b)). The fact that Plaintiff rejected IGT's suggested reasonable accommodation does not indicate a breakdown of the interactive process on IGT's behalf. Rather, the facts

of this case indicate that Plaintiff did not participate in the interactive process in good faith when she failed to clarify her sensitivity to smells and refused to return to a position for which she was qualified. See Allen, 348 F.3d at 1115 (plaintiff's failure to submit medical evidence obviated employer's obligation to engage further in the interactive process regarding accommodation); see also Templeton v. Neodata Servs., Inc., 162 F.3d 617, 619 (10th Cir. 1998) (employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation); Taylore v. Phoenixville Sch. Dist., 174 F.3d 142, 162 (3d Cir. 1999) ("an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals"). Moreover, Plaintiff's rejection of the Product Tester job, coupled with her inability to perform the essential functions of the position she previously held, renders her ineligible to recover under the ADA because she cannot be considered a "qualified individual with a disability." See 29 C.F.R. § 1630.9(d).

In sum, the Court finds that IGT engaged in the interactive process to find a suitable accommodation consistent with Plaintiff's inability to speak. Plaintiff did not provide enough information for IGT to be aware of an actual disability related to her supposed smell sensitivity and the need to accommodate such disability. Accordingly, IGT was under no legal obligation to create additional accommodations beyond what had already been offered. The ultimate breakdown in the interactive process can be traced to Plaintiff's failure to return to work after IGT offered reassignment in March of 2005. The fact that the accommodation offered did not provide Plaintiff with the lead pay differential she would have liked did not render it unreasonable or obligate IGT to restructure or create a position dictated by Plaintiff's preferences. Therefore, as a result of rejecting IGT's reasonable accommodation, Plaintiff cannot be considered a qualified individual with a disability and cannot maintain suit under the ADA.

///

///

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Reconsideration (#59) is DENIED.

DATED: This 12TH day of May, 2008.

_____
UNITED STATES DISTRICT JUDGE